IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) No. 16 CR 719 |
| | ) |
| WILLIAM WHITLEY, a/k/a "Will" and "Willie" | ) Judge Virginia M. Kendall |

## MEMORANDUM OPINION AND ORDER

This Court convicted William Whitley of one count of sex trafficking of children, 18 U.S.C. § 1591(a)(1), and accordingly sentenced him on September 13, 2018. (Dkt. 90.) The Victims of Trafficking and Violence Protection Act (VTVPA) and the Mandatory Victims Restitution Act (MVRA) required restitution, 18 U.S.C. § 1593(a), so the Court ordered Whitley to pay $246,286.59 to a trust that will disburse the funds as necessary to the four minor victims. *See United States v. Charles*, 895 F.3d 560, 565 (8th Cir. 2018); *In re Sealed Case*, 702 F.3d 59, 66 (D.C. Cir. 2012); (Dkt. 94–95).

Under the VTVPA and MVRA, the defendant must pay for "the full amount of the victim's losses," including medical services, therapy and rehabilitation, transportation, housing, child care, and "any other losses suffered by the victim as a proximate result of the offense." 18 U.S.C. § 1593(3) (citing § 2259(b)(3)). The government bears the burden of proving the restitution amount by a preponderance of the evidence. *See Charles*, 895 F.3d at 565; *United States v. Hosking*, 567 F.3d 329, 334 (7th Cir. 2009), *abrogated on other grounds by Lagos v. United States*, 138 S. Ct. 1684 (2018)

(asserting that it is the government's role to connect the defendant's misconduct to the victim's losses). In this case, the government failed to appropriately analyze restitution and satisfy its statutory responsibility to safeguard the victims' interests.[1] *See, e.g., United States v. Darbasie*, 164 F. Supp. 3d 400, 406 (E.D.N.Y. 2016) (citing 18 U.S.C. § 3664(e)).

No matter; it remains this Court's duty to "'engage in an expedient and reasonable determination of appropriate restitution by resolving uncertainties with a view toward achieving fairness to the victim . . .'" *United States v. Jones*, No. 17-1450, 2018 WL 4053870, at *9 (6th Cir. Aug. 24, 2018) (emphasis added) (quoting *United States v. Huff*, 609 F.3d 1240, 1248 (11th Cir. 2010)); *see United States v. Dillard*, 891 F.3d 151, 161 (4th Cir. 2018) (stating that Congress charged the district court with these responsibilities because the VTVPA and MVRA entitle the victims to restitution).

From this view, the Court takes the opportunity to clearly explain its finding that the government's position was incomplete and justify the $246,286.59 restitution award. *See id.* (citing *United States v. George*, 403 F.3d 470, 473–74 (7th Cir. 2005)); *Hosking*, 567 F.3d at 333 (recognizing that district courts must provide explanations of their reasoning for restitution orders and support them with factual findings); *Dillard*, 891 F.3d at 161 (explaining that if the government's proposed restitution

---

[1] Curiously, the government started by not seeking an award at all (Dkt. 83) and only after the Court reminded it that restitution was mandatory (Dkt. 84) did it request approximately $15,000 to cover the victims' future mental health needs caused by the defendant (Dkt. 85). Now, following the defendant's sentencing, the government recommends that the Court enter a restitution order for $246,286.59. (Dkt. 92.)

award does not account for things that concern the court, it can adjust the amount and explain its reasons for doing so).

I

Calculating a restitution award is neither an exact science nor a "precise mathematical inquiry." *United States v. Hoskins*, 876 F.3d 942, 947 (8th Cir. 2017), *cert. denied*, 138 S. Ct. 2589 (2018) (quoting *Paroline v. United States*, 134 S. Ct. 1710, 1727–28 (2014)). In practice, courts must use discretion and judgment to analyze the "'significance of the individual defendant's conduct in light of the broader causal process that produced the victim's losses.'" *Id.* (quoting *Paroline*, 134 S. Ct. at 1727–28).

That said, this Court has *no* discretion to "award restitution for anything less than the full amount of the victim's losses[.]" *United States v. Desnoyers*, 708 F.3d 378, 389 (2d Cir. 2013) (quoting *United States v. Walker*, 353 F.3d 130, 131 (2d Cir. 2003)). Congress intended as much because "[t]he MVRA's overriding purpose is to compensate victims for their losses." *United States v. Robers*, 698 F.3d 937, 943 (7th Cir. 2012), *aff'd*, 572 U.S. 639 (2014) (internal citations and quotations omitted). Put differently, the statute thus seeks "to make victims of crime whole, to fully compensate these victims for their losses and to restore these victims to their original state of well-being." *Id.* (internal citations and quotations omitted).

To accomplish this goal, Congress authorized the "full amount" of losses and left it to the district courts to sort out what those losses are. 18 U.S.C. § 1593(3) (citing § 2259(b)(3)); *see Dillard*, 891 F.3d at 158. These losses include—but are not limited to—the losses cognized in the Act. *See Dillard*, 891 F.3d at 158. "[W]hile the

statute informs the court's analysis as to a proper amount of restitution, it sets no numeric limits on the amount of restitution that can be ordered." *Id.* Congress wanted district courts to "'have broad discretion in ordering restitution . . . to compensate the victims of sexual abuse for the care required to address the long term effects of their abuse.'" *United States v. Rockett*, No. 16-30213, 2018 WL 5786131, at *1 (9th Cir. Nov. 5, 2018) (quoting *United States v. Laney*, 189 F.3d 954, 966 (9th Cir. 1999)); *see United States v. Evers*, 669 F.3d 645, 656 (6th Cir. 2012).

Because of "the devastating and long-term effects that the sexual exploitation of children can have both upon the victims of that abuse and greater society," the victim's losses that the Court may order the defendant to restitute in these cases may be retrospective or prospective. *See United States v. Danser*, 270 F.3d 451, 455 (7th Cir. 2001) (citing *New York v. Ferber*, 458 U.S. 747 (1982)); *see also United States v. Funke*, 846 F.3d 998, 1001 (8th Cir. 2017) (holding that future losses are compensable); *United States v. Rogers,* 758 F.3d 37, 39 (1st Cir. 2014) (same); *United States v. Pearson*, 570 F.3d 480, 486 (2d Cir. 2009) (same); *United States v. Julian*, 242 F.3d 1245, 1246–48 (10th Cir. 2001) (same); *Laney*, 189 F.3d at 966–67 (same). Though this amount must be reasonably certain, the Seventh Circuit is "mindful of the inherent uncertainties attendant upon an award of prospective damages." *Id.*

Understanding restitution this way acknowledges that a child's loss is for a lifetime. *See id.*; *United States v. Doe*, 488 F.3d 1154, 1160 (9th Cir. 2007); *see, e.g.*, *United States v. Padilla*, No. 4:17-CR-00137-DCN, 2018 WL 4365494, at *2 (D. Idaho Sept. 13, 2018) (citing *Laney*, 189 F.3d at 966, and maintaining that, although there

is no guarantee of lifetime counseling, "Congress is well aware that children victimized by sexual abuse often do not recover quickly from their injuries."). For that reason, victims need not promise or guarantee anything to receive a prospective award. *See Rockett*, 2018 WL 5786131 at *2 (affirming restitution award without "requiring actual use of the award for its specified purpose"). Indeed, the victim does not need to be in therapy at the time of restitution, *see United States v. McKay*, No. 00–30024, 2000 WL 1517159, at *1 (9th Cir. 2000), nor does she need to be interested in seeking treatment then. *See In re Sealed Case*, 702 F.3d 59, 67 (D.C. Cir. 2012) ("We compensate a victim with restitution, that is money—whether she chooses to use the money in a particular way is up to her.").

## II

### A

The issue here is whether the minor victims suffered losses that the law provides restitution for. The minors are of course victims within the meaning of the statute and the defendant caused their losses.[2] The question, then, is really one of

---

[2] This case involves the actual individual that sexually trafficked these children so proximate cause is not an analytical problem. Conversely, in child pornography cases:

> Proximate cause is generally at issue when the defendant is one of many end-users (as opposed to the producer), and it is not clear that the defendant's conduct is either a but-for or proximate cause of the victim's loss. In those cases, causation is difficult to determine because of the hundreds or thousands of other end-users contributing to the victims suffering.

*See, e.g., United States v. Miller*, No. 13-20928, 2015 WL 6689363, at *1 (E.D. Mich. Nov. 3, 2015) (citing *Paroline*, 134 S. Ct. at 1722–23). In child pornography terms, Whitley was not one of thousands of "end-users"; instead, he was the sole "producer" that victimized these minors. This abuse caused the horror that the children now live with. Therefore, "the additional strain or trauma stemming from defendant's actions was a substantial factor in causing the ultimate loss." *Doe*, 488 F.3d at 1158.

amount. The government's preliminary views of that figure did not comport with the statute or the case law interpreting it.

First, a victim suffers a compensable loss even if she did not pay for it out of pocket. *See* 18 U.S.C. § 2259(b)(4)(B)(ii) ("A court may not decline to issue [a restitution order due to] . . . the fact that a victim has, or is entitled to, receive compensation for his or her injuries from the proceeds of insurance or any other source."); *see, e.g.*, *United States v. Antonio*, No. CR 15-0776 JB, 2017 WL 2266862, at *11 (D.N.M. Feb. 15, 2017) (citing *United States v. Schmidt*, 675 F.3d 1164, 1169 (8th Cir. 2012), which held that the victim's injuries "generated medical bills and gave rise to a cognizable loss under the MVRA," even though an insurer "compensated [the victim] for her loss by covering the necessary medical costs"); *United States v. Cliatt*, 338 F.3d 1089, 1093–95 (9th Cir. 2003) ("When the victim of a crime enumerated in the MRVA suffers bodily injury, and when the United States government covers her necessary medical expenses . . . 18 U.S.C. § 3664 requires that the restitution be paid directly to the government."). So understood, Whitley still owes restitution for the minor victims' past mental health treatment, participation in residential programs, and the expenses incurred during the victims' involvement in the investigation and prosecution of this case.

Second, the minor victims will almost certainly incur future expenses beyond those mental health costs initially estimated by the government. To be sure, psychological treatment is critical and perhaps the genesis of other needs. *See Charles*, 895 F.3d at 566; *Dillard*, 891 F.3d at 158; *Hoskins*, 876 F.3d at 946; *United States v.*

*Johnson*, 680 F. App'x 194, 200–01 (4th Cir. 2017); *United States v. Sanderson*, 515 F. App'x 16 (2d Cir. 2013); *Danser*, 270 F.3d at 455; *see, e.g.*, *United States v. Jackson*, No. 2:16-CR-00054-DCN, 2018 WL 3127241, at *3 (D.S.C. June 26, 2018); *United States v. Osman*, No. 6:13-CR-280-ORL-28, 2015 WL 4456970, at *5 (M.D. Fla. July 20, 2015), *aff'd*, 853 F.3d 1184 (11th Cir. 2017).

Indeed, adult survivors of child sexual abuse experience many physical health problems, including fibromyalgia, severe premenstrual syndrome, chronic headaches, and irritable bowel syndrome. *See Child Sexual Abuse Statistics*, Darkness to Light, 6 (2018), http://www.d2l.org/wp-content/uploads/2017/01/all_statistics_20150619.pdf. What is more, survivors are at greater risk of having a serious condition like diabetes, cancer, heart disease, strokes, and hypertension. *See id.*; Elizabeth Letourneau, *Victims of Sexual Abuse Face a Lifetime of Costly Problems*, Psychology Today (2018), https://www.psychologytoday.com/us/blog/prevention-now/201805/victims-sexual-abuse-face-lifetime-costly-problems.

That said, mental and physical health alone rarely tell the whole story of the losses incurred by victims, evidenced by the statute's affirmative inclusion of costs like transportation, housing, and child care. *See* § 2259(b)(3)(C); *Rockett*, 2018 WL 5786131 at *2 (insisting that "the rehabilitation of these children does not end with their psychology issues."). Taking their cue, courts often factor in these losses in considering restitution. *See Rockett*, 2018 WL 5786131 at *2 (educational and occupational expenses); *United States v. Speights*, 712 F. App'x 423, 427 (5th Cir. 2018) (social support and transportation costs); *see, e.g.*, *United States v. Romero-Medrano*, No.

4:14-CR-050, 2017 WL 5177647, at *3 (S.D. Tex. Nov. 8, 2017), *aff'd*, 899 F.3d 356 (5th Cir. 2018) (education and vocational losses); *United States v. Miltier*, No. 2:15CR151, 2016 WL 6821087, at *5 (E.D. Va. Nov. 17, 2016) (same); *United States v. Schultz*, No. 14-10085-RGS, 2015 WL 5972421, at *2 (D. Mass. Oct. 14, 2015) (same); *United States v. McIntosh*, No. 4:14CR28, 2014 WL 5422215, at *6 (E.D. Va. Oct. 22, 2014) (same); *United States v. Watkins*, No. 2:13-CR-00268 LKK AC, 2014 WL 3966381, at *5 (E.D. Cal. Aug. 13, 2014), *report and recommendation adopted*, No. 2:13-CR-00268-MCE-AC, 2014 WL 5697712 (E.D. Cal. Oct. 30, 2014) (same); *United States v. Hernandez*, No. 2:11-CR-00026-GEB, 2014 WL 2987665, at *9 (E.D. Cal. July 1, 2014) (same); *United States v. Haynes*, No. 3:11-CR-85, 2012 WL 3242206, at *4 (E.D. Tenn. Aug. 7, 2012) (same).

All this does not even mention the catchall "any other losses" category. In *United States v. Laraneta*, the Seventh Circuit illustrated some losses that subsection might cover, including:

> 'costs related to schooling (school supplies, travel allowances, uniforms, the costs of food and snacks)' for a 'program for alternative learning that would allow the child victims to receive some type of education' because they had previously 'stopped attending school altogether after their ordeal,' involved in *United States v. Doe*, 488 F.3d 1154, 1159, 1161–62 (9th Cir. 2007), and the costs incurred by guardians who took custody of the child victims of making necessary renovations to house them, and of transporting them to and from school, involved in *United States v. Searle*, 65 F. App'x 343, 346 (2d Cir. 2003).

700 F.3d 983, 990 (7th Cir. 2012). Both facially and as-applied then, the statute covers a whole host of losses to help fully reform victims and their lives. Congress appreciated that, because of the psychological and emotional impacts, many victims

fight to truly engage in society and function as adults in the work place or classroom. *See* 22 U.S.C.A. § 7101 (finding that "adequate services and facilities do not exist to meet victims' needs regarding health care, housing, education, and legal assistance, which safely reintegrate trafficking victims into their home countries.").

B

Scientific research accords with this comprehensive legal view of the effects sex trafficking has on children. "Sex trafficking victims who escape abusive situations often need an array of financial and other supports to begin building stable lives, . . . includ[ing] housing assistance, legal assistance, physical . . . health services, . . . substance abuse treatment, education, and job training, among other services." Sarah Gonzalez Bocinski, *The Economic Drivers and Consequences of Sex Trafficking in the United States*, Institute for Women's Policy Research, 6 (2017), https://iwpr.org/publications/economic-drivers-consequences-sex-trafficking-united-states/; *see* Annual Report, U.S. Dep't of State Advisory Council on Human Trafficking, 15 (2017), https://www.state.gov/j/tip/276836.htm ("Providing survivors with education, job training, and job placement are important elements to help survivors sustain their life.").

In fact, "[w]hen service providers and law enforcement personnel were asked to describe the needs of victims of human trafficking, a common response was, 'what don't they need.'" Heather J. Clawson and Nicole Dutch, *Addressing the Needs of Victims of Human Trafficking: Challenges, Barriers, and Promising Practices*, U.S. Dep't of Health and Human Services Office of the Assistant Secretary for Planning

and Evaluation, 1 (2008), https://aspe.hhs.gov/report/addressing-needs-victims-human-trafficking-challenges-barriers-and-promising-practices; *see* Meghan McCann, *Human Trafficking: An Overview of Services and Funding for Survivors*; National Conference of State Legislatures, 6 (2018), http://www.ncsl.org/research/civil-and-criminal-justice/human-trafficking-an-overview-of-services-and-funding-for-survivors.aspx; Heather J. Clawson, et al., *Human Trafficking into and within the United States: A Review of the Literature*, U.S. Dep't of Health and Human Services Office of the Assistant Secretary for Planning and Evaluation, 11–12, 33 (2009), https://aspe.hhs.gov/report/human-trafficking-and-within-united-states-review-literature.

Taking housing as an example, "[o]ne report found that securing emergency shelter and long-term transitional housing were among victims' greatest needs reported by service providers." Sarah Gonzalez Bocinski, *supra*, at 6; *see* Annual Report, U.S. Dep't of State Advisory Council on Human Trafficking, 18 (2016), https://www.state.gov/j/tip/263114.htm (noting that "the housing needs of survivors of human trafficking are immense."); *2012 Final Report: An Inventory and Evaluation of the Current Shelter and Services Response to Domestic Minor Trafficking*, National Colloquium, 1 (2013), http://sharedhope.org/wp-content/uploads/2013/05/National-Colloquium-2012-Report-B.pdf ("Shelter and services for identified victims and survivors of domestic minor sex trafficking (DMST) are critical for their recovery and success."); Meghan McCann, *supra*, at 6; Heather J. Clawson, et al., *supra*, at 13.

Education and vocation are two other instances where victims' needs are crucial. *See* Human Trafficking Task Force e-Guide, U.S. Dep't of Justice Office of Justice Programs (2018), https://www.ovcttac.gov/taskforceguide/eguide/4-supporting-victims/44-comprehensive-victim-services/education-job-trainingplacement/ ("A key feature of supporting survivors in attaining long-term success is access to a reasonable and sustainable standard of living, with opportunities for economic empowerment. [. . .] The workplace is a key environmental factor in our mental well-being and health. Economic well-being impacts personal identity, self-esteem, and social recognition."); Heather J. Clawson, et al., *supra*, at 36 ("Providing social services is essential to meeting the needs of victims. These services help stabilize victims by offering opportunities [. . .] for a victim to be able to reintegrate into society. Through social services, victims can become personally and economically independent."); *2012 Final Report: An Inventory and Evaluation of the Current Shelter and Services Response to Domestic Minor Trafficking, supra*, at 33.

These are steep future costs. "The CDC recently estimated the lifetime burden . . . to be $210,012 per victim. This includes immediate costs, as well as loss of productivity and increased healthcare costs in adulthood." *Child Sexual Abuse Statistics, supra*, at 7. While that estimate is for all forms of child maltreatment, it compares to another study's $282,734 approximated lifetime cost for each female survivor. *See* News Release, *One Year's Losses for Child Sexual Abuse in U.S. Top $9 Billion, New Study Suggests*, Johns Hopkins Bloomberg School of Public Health (2018),

https://www.jhsph.edu/news/news-releases/2018/one-years-losses-for-child-sexual-abuse-in-us-top-9-billion.html; *see also* Elizabeth Letourneau, *supra*.

C

In this case, the presentence investigation report ("PSR") paints a grim picture of the minor victims' struggles. Minors A, B, and D were already runaways and Minor A was a human trafficking victim before Whitley solicited sex from her. (Dkt. 79 ¶¶ 15–16, 20, 26.) Minors A, C, and D all knew that Whitley was a police officer; specifically, Minor D met Whitley when he picked her up off the street in his police car one night and she later felt like she had nowhere else to go so she stayed with Whitley. *Id.* ¶¶ 18, 24, 26–27.

Whitley sometimes kept a loaded firearm under his pillow when he engaged in commercial sex acts with Minor A. *Id.* ¶ 18. Additionally, Minor A smoked marijuana and took pills with Whitley, *id.*, while Minor D smoke marijuana with him, *id.* ¶ 27. Finally, Whitley took nude or exposed photographs of Minors A, C, and D. *Id.* ¶¶ 19, 25 29. The psychological scars from these incidents will not soon heal. The government acknowledges as much, stating that Whitley significantly impacted the Minors' lives. *Id.* at 53. For instance, Minor D testified to the grand jury that she still has nightmares where she is having sex with Whitley. *Id.* Whitley coerced the Minors into engaging in commercial sex acts with him, therefore the law entitles them to restitution.

Based on the facts adduced here, and the scientific evidence ascertained from the public record, this Court has little doubt that the full amount of the victims' losses

totals $246,286.59. Theoretically, then, each Minor will have $61,571.65 at her disposal to utilize in her lifelong recovery. Although this figure does its best to help restore the victims to well-being, it does not come close to the average lifetime costs of child sexual abuse referenced earlier, which exceed $200,000 per victim.

Moreover, this restitution award is lower than others imposed by courts, which sometimes venture into the million-dollar range. *See Danser*, 270 F.3d at 455–56 (upholding award of $304,200 for lifetime counseling sessions); *see also* Alexandra F. Levy & Martina E. Vandenberg, *Breaking the Law: The Failure to Award Mandatory Criminal Restitution to Victims in Sex Trafficking Cases*, 60 St. Louis U. L.J. 43, 60–61 (2015) ("In *United States v. Lewis*, the defendant trafficked four children into the sex industry. He eventually pled guilty to multiple counts of sex trafficking and was sentenced to twenty years in prison. The court ordered him to pay $1,215,000, $1,151,300, $845,165, and $680,590 to the four victims, respectively."); Comment, Jesse Hong, *Child Sex Trafficking: Law and Economics Perspective*, 12 J.L. Econ. & Pol'y 125, 143 (2016) (observing that the average restitution award in sex trafficking cases litigated between 2009 and 2012 was $151,076.58).

### III

Turning away from the substance and now to the form of this remedy, the Court orders the Clerk to serve as grantor to establish a Trust in the names of the four victims where the government can deposit the $246,286.59 restitution award. Additionally, the Court appoints the following counsel to serve as Trustee to manage the funds:

> Leonard J. LeRose, Jr.
> Law Office of Leonard J. LeRose, Jr., Ltd.
> Phone: (312) 753-6020
> Email: llerose@leroselaw.com

This device worked well in a child pornography case in this District, *see, e.g.*, Stipulation, United States v. Nurek, No. 04 CR 333 (N.D. Ill. Sep. 4, 2007), Dkt. 136; *see also* 60 St. Louis U. L.J. at 71 (suggesting that pro bono counsel can "help create trusts in which restitution funds obtained for children can be deposited and protected"), and the Court is confident that it is one Congress envisioned, *see Laney*, 189 F.3d at 966–67.

True enough, "Congress created a mechanism for compensating for the cost of future therapy." *Id.* at 966 (covering unascertainable or non-discovered losses). But here, as in *Laney*, the Minors' "costs are 'ascertainable' and have, in fact, been ascertained" by the government and this Court. *Id.* The Minors will not "'discover' in the future that they need counseling [and other services]; they already know that they do." *Id.* at 967. Congress did not intend victims with long-term care needs to receive restitution only after paying for those needs because requiring "a victim to petition the court for an amended restitution order every 60 days for as long as the therapy lasted" would not serve the purposes of the statutory scheme. *See id.*

To allay any outstanding concerns, the Court directs the Trustee to terminate the entire Trust at a future date certain to be agreed upon by the parties, with any remaining funds to be used to satisfy any outstanding monetary penalty that Whitley owes under the Court's sentence, and then, any that is left over should go to Whitley. *Cf.* United States v. Nurek, No. 04 CR 333, Dkt. 136 at 5. If Whitley is no longer

living, the balance must go to the U.S. Department of Justice's Crime Victim Fund. *See id.*

Whitley shall have seven days from the entry of this Order to object to it. Should Whitley object, he may accordingly move the Court to hold a restitution hearing where each party can put on evidence—both documentary and testimonial. *See United States v. Pleitez*, 876 F.3d 150, 159–60 (5th Cir. 2017) (citing § 3664(d)(4)). Additionally, the parties might consider moving the Court to order the probation officer to prepare a separate restitution report, *see* § 3664(a); *see also* Fed. R. Crim. P. 32(c)(1)(B), or to appoint pro bono counsel to serve as guardian *ad litem* of the Minors, *see* 60 St. Louis U. L.J. at 60–61, 71 (illustrating the *Lewis* case where the district court so ordered).

\* \* \*

As a final word, the criminal justice system is failing survivors by forcing them to bear the permanent costs of their own trafficking. While federal law controls for this by mandating restitution for all trafficking victims, the government does not routinely request it and courts rarely award it in sex trafficking cases. According to one study that reviewed all human trafficking cases filed in federal court between 2009 and 2012, only 36% resulted in restitution awards to the victims. *See* 12 J.L. Econ. & Pol'y at 143.

Adding insult to injury, only 31% of sex-trafficking victims received restitution, compared to 94% of labor-trafficking victims. *See id.* Even the average amounts awarded to sex-trafficking victims were lower, checking in at a quarter of that

awarded to labor-trafficking victims for all cases filed, and in cases where the court awarded restitution, the average amount was $228,201.82 for labor trafficking and $151,076.58 for sex trafficking. *See id.* & n.112. At least one commentator explained this disparity by conceding there is a "certain blame-the-victim attitude prevalent in the administration of justice when it comes to the victims of sex trafficking." *Id.*

There is no place for victim-blaming in the law, especially when the full extent of victims' suffering is so hard to grasp. *See Paroline*, 134 S. Ct. at 1717. Victims' abusers take away their childhoods, their self-conception of their own innocence, and their "freedom from the kind of nightmares and memories that most others will never know." *Id.* The legislative branch did its job to address this public health crisis; now it is time for the executive and judicial branches to step up and do theirs. Otherwise, this Act will remain mandatory in name only.

_____
Virginia M. Kendall
United States District Judge

Date: January 11, 2019